NITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ERIC MASSENBURG, | ) | |
| TONYA MASSENBURG, and | ) | |
| H.M., a minor child, by her parents | ) | |
| and next friends and guardians, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Cause No.: 3:09-CV-136 RM |
| | ) | |
| LAURIE RICHARDSON, an employee | ) | |
| of Child Protective Services, | ) | |
| JACQUE D. DERMODY, Adult | ) | |
| Probation Officer, | ) | |
| LYN STEVENS, nurse at St. Anthony | ) | |
| Memorial Health Centers, and | ) | |
| JANE DOE, teacher at Eastport | ) | |
| Early Learning Center, | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

This matter is before the court on motions for summary judgment filed by

defendants Jacque Dermody, Lyn Stevens, and Laurie Richardson. The court

already has granted defendant Jane Doe's summary judgment motion. *See*

Opinion and Order, Oct. 12, 2010 [Doc. No. 101]. This court ordinarily requires

parties to submit motions for summary judgment that are fully briefed, *see*

Memorandum of Scheduling Conference, Oct. 12, 2010 [Doc. No. 100], but the

Massenburgs never responded to the summary judgment motions Laurie

Richardson and Jacque Dermody served on them. Most of the plaintiffs' claims

don't state claims upon which relief can be granted, and this court previously

dismissed the claims, though without prejudice. *See* Memorandum of Hearing, March 2, 2010 [Doc. No. 57]; FED. R. CIV. P. 12(b)(6). The Massenburgs filed an amended complaint that adds and clarifies a couple of claims, but the amended complaint remains largely deficient for the same reasons their original complaint was dismissed, which reasons were stated in open court. *See* Transcript of Motions Hearing [Doc. No. 71].

The Massenburgs haven't presented any evidence against any defendant that would substantiate any of their claims in any way. At the least, summary judgment is a mechanism designed to prevent wholly unsubstantiated claims such as these from taking up public time and expense at trial. *See generally*, FED. R. CIV. P. 56 (Dec. 1, 2010). The court's opinion granting summary judgment to teacher Jane Doe fully informed the Massenburgs of the requirement that they present some evidence beyond the amended complaint, and, having had such notice, it falls within the court's discretion to simply grant the defendants' summary judgment motions on the basis of the complete lack of evidence to support their claims. *See* Fed. R. Civ. P. 56(e)(4) (Dec. 1, 2010); Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003) (stating that summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events"); Flynn v. Sandahl, 58 F.3d 283, 288 (7th Cir. 1995) (stating failure to respond "constitutes an admission . . . that there are no disputed issues of genuine fact warranting a trial"). For this reason and for the further reasons

stated below, the defendants' motions are granted, and judgment will be entered in favor of all defendants.

The court incorporates here and assumes familiarity with the facts and summary judgment standard set forth in its Opinion and Order granting summary judgment to teacher Jane Doe. Opinion and Order, Oct. 12, 2010, at 2-4. The court further assumes familiarity with the plaintiffs' amended complaint filed on March 22, 2010.

*1. Probation Officer Jacque D. Dermody*

The Massenburgs allege that Probation Officer Jacque Dermody promised to take Eric Massenburg off the Indiana sex offender registry and didn't do so out of racial animus. Ms. Dermody responds that she had no authority to add or remove names from the registry and that she's entitled to quasi-judicial immunity.

Ms. Dermody doesn't have the authority to add or remove names from the Indiana Sheriff's Sex Offender Registry. She was a Probation Officer of the LaPorte Circuit Court and she served "at the pleasure of the appointing court and [was] directly responsible to and subject to the orders of the court." IND. CODE § 11-13-1-1(c). An entirely different department of an entirely different branch of government—the Sheriff's department—is responsible for maintaining Indiana's sex offender registry. *See* IND. CODE § 11-8-8-1 *et seq.* Removal of a name from the Registry requires a petition, a court hearing, and specific findings. IND. CODE § 11-

8-8-22. Ms. Dermody can't have done anything to affect the presence of Mr. Massenburg's name on the Registry.

No evidence has been presented to support the assertion that Jacque Dermody made any promise to Eric Massenburg to remove his name from the sex offender registry. Even if she made a promise to do something she had no authority to do, no reason has been presented for why Ms. Dermody shouldn't be entitled to absolute quasi-judicial immunity for both state and federal claims. *See* Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992); H.B. v. State of Indiana-Elkhart Div. of Family & Children, 713 N.E.2d 300, 302 (Ind. App. 1999).

The court grants Ms. Dermody's motion for summary judgment.

*2. Nurse Practitioner Lyn Stevens*

The Massenburgs claim that Nurse Practitioner Lyn Stevens maliciously misdiagnosed their child's vaginal infection as a tear that could only be caused by digital penetration. They say Nurse Stevens should have believed Tonya Massenburg's explanation that the child only had an infection and should have called the child's physician instead of Laurie Richardson. The Massenburgs say that Nurse Stevens purposely withheld from Ms. Richardson the explanation that the tear may have been caused by the child's scratching, which, they say, evidences a conspiracy to deprive them of custody of their child, defame them, and cause other violations of their rights.

Nurse Stevens argues that the Indiana state claims are essentially a medical malpractice claim, and a malpractice claim is jurisdictionally barred here. Further, Nurse Stevens says she was only performing her statutory duty to report suspected child abuse, and to not report her findings upon examining the child would have been criminal. Finally, Nurse Stevens maintains she was a private actor, never met teacher Jane Doe or Probation Officer Dermody, and only met Laurie Richardson for the first time on March 8, 2007.

The Massenburgs don't deny the evidence that the child had a tear and not just an infection. Instead, they point to the affidavit Nurse Stevens submitted, where she admits that the tear she found on the child could have been caused by the child scratching herself. They say Nurse Stevens nefariously omitted this exculpatory explanation from Laurie Richardson, but they present no evidence as to what was or wasn't communicated between Nurse Stevens and Ms. Richardson. Instead, the only evidence available (Nurse Stevens' affidavit) reveals that Tonya brought her child to the Emergency Room, as Ms. Richardson instructed her to do, and told the nurses that Child Protective Services told her to bring the child into the ER. That information caused the nurses to examine the child for signs of sexual abuse. Seeing a tear caused by a finger and performing tests that ruled out an infection, Nurse Stevens told Ms. Richardson of her findings. The child's medical records indicate that the child wouldn't talk at all to Nurse Stevens.

Without presenting any supporting evidence, the Massenburgs leap from the statement that the tear could have been caused by the child herself to the

conclusion that Nurse Stevens entered into a conspiracy to deprive the Massenburgs of custody of their child and defame them, all out of racial animus. The Massenburgs mistake their burden on a motion for summary judgment: they argue that the burden is on Nurse Stevens to prove her case before any burden is placed on them. This isn't how the federal summary judgment process works, and the Massenburgs were notified of the requirements placed on them by this court's order granting summary judgment to teacher Jane Doe. Nurse Stevens' summary judgment motion is a motion that argues to the court that the plaintiffs can't prove their case. The motion itself immediately places a burden on the plaintiffs to show what evidence they have that can convince a jury that their version of the facts is true. Our court of appeals has saliently called it the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003). The Massenburgs haven't provided any evidence that could lead a jury to believe their story, much less overcome the immunity that the law gives to reporters of suspected child abuse.

The Massenburgs designate their complaint as their evidence demonstrating that genuine issues of material fact exist regarding Nurse Stevens' behavior. Conclusory allegations in a complaint don't create the genuine issues of material fact required to defeat summary judgment. Jackson v. E.J. Brach Corp., 176 F.3d 971, 984 (7th Cir. 1999); Mills v. First Fed. Sav. & Loan Ass'n of Belvidere, 83

F.3d 833, 843 (7th Cir. 1996); <u>Powers v. Dole</u>, 782 F.2d 689, 695 (7th Cir. 1986). The recently revised Rules of Civil Procedure incorporate this well-settled principle of summary judgment procedure. *See* FED. R. CIV. P. 56(c) (Dec. 1, 2010).

Nurse Stevens argues that Indiana medical malpractice law deprives the court of jurisdiction to even entertain the Massenburgs' claims. In Indiana, medical malpractice claims must first be submitted to a medical review panel before they may be filed in court. IND. CODE § 34-18-8-4. Exceptions to this rule are (1) if the parties all agree in writing to waive panel review, IND. CODE § 34-18-8-5, or (2) if pleadings include a declaration that the patient seeks damages from the health care provider in an amount not greater than $15,000, IND. CODE § 34-18-8-6. Under Indiana law, relief can't be granted on a medical malpractice claim unless a medical review panel has given its opinion on the claim or unless one of the exceptions applies. <u>Rocca v. Southern Hills Counselling Ctr.</u>, 671 N.E.2d 913, 915 (Ind. App. 1996).

Ms. Stevens is mistaken to the extent she sees this as a question of this court's subject matter jurisdiction; the court has subject matter under 28 U.S.C. § 1343 and Indiana substantive law doesn't change that. See <u>Estate of Rice ex rel. Rice v. Correctional Medical Svcs.</u>, 586 F. Supp. 2d 1208, 1225 (N.D. Ind. 2009) ("The Indiana General Assembly doesn't decide the jurisdiction of the federal courts, so the legislative prohibition on court action doesn't affect this court's subject-matter jurisdiction. . . . But because the review panel hasn't issued an order and the plaintiff didn't file suit pursuant to section 7, the Estate's complaint

states no claim upon which relief can be granted under Indiana law as to Dr. Mathew or Goshen Hospital at this point."). An attempted medical malpractice claim under Indiana law that hasn't been submitted to a review panel states no claim upon which relief can be granted under Indiana law and so cannot succeed on summary judgment. The Massenburgs state no medical malpractice claim on which relief can be granted under Indiana law.

Nurse Stevens next argues that Indiana law grants her immunity from state law claims. Indiana law imposes a duty on all persons to act when there is suspicion that a child has been abused. IND. CODE § 31-33-5-1. Health care providers must make an "immediate" oral report to the department of child services or to local law enforcement. IND. CODE § 31-33-5-4. Reporters are granted immunity from all civil and criminal liability, IND. CODE § 31-33-6-1, unless the reporter has acted maliciously or in bad faith, IND. CODE § 31-33-6-2. Further, there is a presumption that a reporter has acted in good faith. IND. CODE § 31-33-6-3. Failure to report is a crime. Ind. Code § 31-33-22-1.

Indiana law imposes a strict duty to report to the department of child services or local law enforcement; there is no duty to believe a parent's explanation of signs of child abuse, nor is there a duty to involve a managing physician in the decision to report suspected child abuse. *See* Anonymous Hospital v. A.K., 920 N.E.2d 704, 707-708 (Ind. App. 2010). Immunity extends to the very diagnosis giving rise to the report made. Id. at 710. Nurse Stevens' duty was to report suspected, not confirmed, child abuse. Nurse Stevens examined the

8

child for signs of sexual abuse because of what Tonya Massenburg told her when she brought the child to the ER: this gave her a good faith basis to say the tear could have been caused by digital penetration and to report her findings to Child Protective Services agent Laurie Richardson. The child never spoke to Nurse Stevens, and nothing indicates that Nurse Stevens ever herself opined on whose fingers caused the scratch. Nurse Stevens did her duty under Indiana law and she is immune from liability from any mistakes made under these facts—though the court notes that no evidence now before it demonstrates that a mistake was even made.

Finally, all federal claims against Nurse Stevens must be denied because Nurse Stevens didn't act under color of state law. *See* Brokaw v. Mercer County, 235 F.3d 1000, 1009 (7th Cir. 2000). The Massenburgs say Nurse Stevens is brought within the ambit of § 1983 because she allegedly conspired with the other defendants to deprive the plaintiffs of their constitutionally guaranteed rights. Private citizens can be held liable for deprivation of constitutional rights under § 1983 if they conspire with public employees to cause the violation of rights. Brokaw v. Mercer County, 235 F.3d at 1016. No evidence has been presented to suggest that Nurse Stevens knew teacher Jane Doe or Probation Officer Dermody, or that Nurse Stevens had or has any relationship with Laurie Richardson beyond simply reporting her findings to her on March 8, 2007. Nothing but unsubstantiated speculation supports a conspiracy theory here.

Nurse Stevens' motion for summary judgment is granted.

9

*3. Laurie Richardson, Child Protective Services*

Laurie Richardson served her motion for summary judgment on the Massenburgs in November 2010, and they haven't responded. The Massenburgs have presented no evidence to support their allegations that Ms. Richardson, motivated by racial animus, concocted a conspiracy to take the Massenburgs' child away from them and lied multiple times to multiple people to get her way. The evidence available to the court establishes only that Ms. Richardson was simply doing her job. A mistake might have been made, but that was quickly determined through proper investigation and court hearings.[1] An innocent mistake doesn't violate constitutional rights. *See, e.g.*, Brokaw v. Mercer County, 235 F.3d 1000, 1012 (7th Cir. 2000) ("[A]n official satisfies the personal responsibility required of § 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent."); Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989) (negligence and gross negligence don't violate Due Process).

The state law claims against Ms. Richardson can't succeed because Indiana law grants Ms. Richardson statutory immunity. In Indiana, Department of Child

---

[1] No evidence directly supports the assertion that a mistake was made here, though mistake can be inferred from the relatively quick return of the child to her parents' custody and the dismissal of the CHINS proceedings.

Services employees "are not personally liable, except to the state, for an official act done or omitted in connection with performance of duties under this title." IND. CODE § 31-25-2-2.5. No reason has been presented to the court why the statute shouldn't be given its ordinary and plain meaning, *see* Anonymous Hospital v. A.K., 920 N.E.2d 704, 709 (Ind. App. 2010), or why some exception would prevent this application of immunity.

Ms. Richardson is also entitled to qualified immunity for the federal claims against her. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); *see also* Brokaw v. Mercer County, 235 F.3d 1000, 1022 (7th Cir. 2000) (discussing qualified immunity). Two questions arise regarding qualified immunity, and the court can address them in whatever order the case suggests is best: (1) whether the facts the plaintiffs have alleged make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. at 815-16.

Courts generally agree that because children's welfare involves competing interests—the child's liberty interest in family relations and the state's interest in protecting the child—there is a continuum of behavior, some of which violates constitutional rights and some of which doesn't violate constitutional rights, so

governmental interference with the family should be evaluated on a case by case basis. *See* Brokaw v. Mercer County, 235 F.3d at 1023 (gathering sources). "When the facts of the case place it in the center of the continuum where the two interests overlap and create a tension, the right to family integrity may properly be characterized as nebulous, and thus a defendant may claim the protection of qualified immunity." Id. (*quoting* Morris v. Dearborne, 181 F.3d 657, 671 (5th Cir. 1999)). But no qualified immunity arises when the facts of the case suggest the state's interest was negligible. *See* id. (*quoting* Morris v. Dearborne, 181 F.3d at 671).

The Massenburgs claim that Ms. Richardson interfered with their family's constitutional rights by seizing their child and encouraging the continued detention of their child while (1) knowing that Eric Massenburg didn't belong on the sex-offender registry; (2) falsely stating to Detective Lachmund that the child's physician had never seen the child before; and (3) falsely claiming that the child told her that she couldn't tell anyone what happened, not even her mother. The Massenburgs haven't presented any evidence to support these troubling allegations. The facts available on today's record indicate only that Ms. Richardson was doing her job in good faith when she responded to a suspicious situation involving an apparently distraught child with a vaginal tear and a father on the sex offender registry. The available evidence suggests that Ms. Richardson's response to the situation was lawful, even if perhaps ultimately mistaken. *Compare* Brokaw v. Mercer County, 235 F.3d at 1023 ("[W]e cannot conclude that

the individual defendants are entitled to qualified immunity because the facts once uncovered may turn out to be so severe and obviously wrong that the defendants should have known they were violating C.A.'s constitutional rights.").

Ms. Richardson's motion for summary judgment is granted.

## *4. Conclusion*

For the reasons stated, the defendants' motions for summary judgment are GRANTED [Doc. Nos. 92, 119, 125]. Judgment will be entered in favor of all defendants.

The court further VACATES the final pretrial conference date of March 28, 2011 and the jury trial date of April 12, 2011 and any pending deadlines.

SO ORDERED.

ENTERED: <u>January 25, 2011</u>

<u>/s/ Robert L. Miller, Jr.</u><br>
Judge<br>
United States District Court